IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| RACHEL LEE PADGETT, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CV 121-034 |
| | ) (Formerly CR 115-107) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Rachel Padgett filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. The Court **REPORTS** and **RECOMMENDS** the amended § 2255 motion be **GRANTED** as to Petitioner's claim in Ground 3(a), the amended § 2255 motion be **DISMISSED** without prejudice as to all other claims, the motion for an evidentiary hearing be **DENIED AS MOOT**, (doc. no. 3), and this civil action be **CLOSED**.

**I.   BACKGROUND**

**A.   Indictment**

On December 3, 2015, the grand jury in the Southern District of Georgia charged Petitioner and three co-defendants in a thirteen-count indictment. United States v. McGhee et al, CR 115-107, doc. no. 3 (S.D. Ga. Dec. 3, 2015) (hereinafter "CR 115-107"). The indictment charged Petitioner with conspiracy to distribute and possess with intent to distribute controlled substances (Count One), possession with intent to distribute a schedule II-controlled substance (Count Eight), possession of a firearm during a drug trafficking crime

(Count Ten), and possession of a firearm by a convicted felon (Count Eleven). Id. The Court first appointed attorney Brendan M. Fleming to represent Petitioner, then appointed C. Scott Connell as substitute counsel. Id., doc. no 28; id., doc. no. 128.

### B. Guilty Plea

On May 8, 2016, Petitioner appeared with counsel and pled guilty to the conspiracy charge in Count One and the felon with a firearm charge in Count Eleven. Id., doc. nos. 141-143. In exchange for the guilty plea, the government agreed to (1) dismiss the remaining counts of the indictment; (2) not object to a recommendation for a two-point acceptance of responsibility reduction; and (3) move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction.. Id., doc. no. 143, ("Plea Agreement"), pp. 4, 6.

Petitioner's plea agreement contained the following factual basis for her guilty plea:

> The elements necessary to prove the lesser included offense charged in Count One are (1) that the Defendant conspired or agreed with another person, to try to accomplish a common and unlawful plan, as charged, (2) that, knowing the unlawful purpose of the plan, the Defendant willfully joined in it; and (3) that the object of the unlawful plan was to distribute or possess with intent to distribute methamphetamine.
>
> Defendant agrees that she is, in fact, guilty of the lesser included offense. She agrees to the accuracy of the following facts, which satisfy each of the offense's required elements: That beginning on or before January 2013, the exact beginning date being unknown to the Grand Jury, and continuing until the return of this indictment, in McDuffie and Richmond Counties in the Southern District of Georgia, the District of South Carolina, and elsewhere, the defendant herein: did knowingly and intentionally combine, conspire, confederate, and agree together with other persons known and unknown, to commit certain offenses against the United States, that is, to distribute and to possess with intent to distribute methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.
>
> The elements necessary to prove the offense charged in Count Eleven

are (1) that Defendant knowingly possessed a firearm in or affecting commerce; and (2) that, before possessing the firearm, Defendant had been convicted of a felony, that is, a crime punishable by imprisonment for more than one year.

Defendant agrees that she is, in fact, guilty of the offense. She agrees to the accuracy of the following facts, which satisfy each of the offense's required elements: That on or about the 24th day of July 2015, in Richmond County, within the Southern District of Georgia, the defendant did knowingly possess, in affecting commerce, certain firearms, those are, a North American Arms, .22 caliber revolver, serial number W10386, and a Smith & Wesson, Model Bodyguard, .380 caliber pistol, serial number KBH9856 after having been convicted of the following crimes punishable by imprisonment for a term exceeding one year: Forgery in the First Degree, Richmond County, State of Georgia, Indictment No. 2007-RCCR-588, March 14, 2012; and Criminal Use of an Article With an Altered ID Mark, Richmond County, State of Georgia, Indictment No. 2013-CR-1687, December 2, 2013, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2).

Id. at 1-3. With her signature on the Plea Agreement, Petitioner "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 11.

By signing the Plea Agreement, Petitioner also "entirely waive[d] her right to a direct appeal of her conviction and sentence on any ground" unless the Court (1) sentenced her above the statutory maximum, (2) sentenced her above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 6. Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] her attorney not to file an appeal." Id. Further, Petitioner waived her right to collaterally attack her conviction and sentence on any ground other than ineffective assistance of counsel. Id. at 7. By signing the Plea Agreement, Petitioner additionally attested Mr. Connell "represented her faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by her attorney." Id. at 8.

At the guilty plea hearing, Chief United States District Judge J. Randal Hall first confirmed no one had threatened or pressured Petitioner into pleading guilty and she clearly understood where she was and why she was in court. Id., doc. no. 203 ("Rule 11 Tr."), pp. 3, 6. Judge Hall reviewed all four charges against Petitioner, and confirmed Petitioner had as much time as she needed to go over the charges with Mr. Connell. Id. at 8, 11-12. Petitioner also testified under oath she was satisfied with the assistance she had received from Mr. Connell and that she had read and reviewed the Plea Agreement with counsel before signing it. Id. at 7, 9, 11-12.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed she clearly understood those rights. Id. at 9-11. Among the list of rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id. Judge Hall also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement. Id. at 13. Judge Hall confirmed that other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea. Id. at 14.

Judge Hall reviewed the potential for a twenty-year term of imprisonment for Count One and a ten-year term of imprisonment for Count Eleven. Id. Judge Hall reviewed the potential $1,000,000 fine and three years of supervised release related to Count One and the potential $250,000 fine and three years of supervised release related to Count Eleven. Id. Petitioner confirmed she understood the penalties associated with conviction under those two offenses. Id. Judge Hall also explained that, upon Petitioner's conviction, she would lose the right to vote, hold public office, serve on a jury, and own or possess firearms or

ammunition. Id. at 15.  Judge Hall further explained that, upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report ("PSI"), and Petitioner's sentence would be based on the information in the PSI. Id. at 16.  Judge Hall explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range. Id. at 17.  Petitioner stated that she understood the sentencing process described by Judge Hall and that no one had promised her she would receive a particular sentence. Id.

Next, Judge Hall heard a factual basis for the guilty plea from Joel Danko, a task force officer assigned to the Drug Enforcement Administration ("DEA") with the Richmond County Sheriff's Office ("RCSO"). Id. at 19-24.  In April 2014, Officer Danko became involved with the investigation of a drug distribution organization spearheaded by co-defendant William Mark McGhee. Id. at 19.  Officer Danko testified "[i]t was a very well-laid-out organization. They had team names. They had team shirts. They had their own hierarchy in the organization." Id. at 20.  On July 24, 2015, Investigator Michael Day informed Officer Danko that McGhee was with Petitioner at a hotel on Gordon Highway. Id. That evening, officers conducted a traffic stop of McGhee's red Ford Mustang and seized more than $6,000 and a firearm. Id. at 21, 24.  Petitioner's purse contained a single bullet and a .22 caliber revolver. Id. at 21.  Petitioner consented to a search of the hotel room, and inside a hotel safe the officers found a .380 firearm and sixteen grams of methamphetamine. Id. at 22.

Officers subsequently intercepted phone calls between Petitioner and McGhee showing McGhee supplied Petitioner with three ounces of methamphetamine on a monthly basis.  Id. at 23.  Furthermore, Petitioner acted as a secretary for the organization by

5

introducing conspirators to the organization, assisting with deliveries, collecting money and assisting with sales, arranging meals and lodging, depositing funds into incarcerated conspirators' inmate accounts, retaining counsel for conspirators, and organizing female companionship for conspirators.  Id.  Petitioner had been previously convicted of two felonies, and the two firearms in Petitioner's possession were manufactured outside of Georgia.  Id. at 24.

Petitioner confirmed to Judge Hall the information provided by Officer Danko and contained in the indictment was true, she participated in the conspiracy, she possessed the two firearms despite being a convicted felon, and she was guilty of, and wanted to plead guilty to, Counts One and Eleven.  Id. at 25.  Judge Hall then summarized the proceedings as follows:

> [T]he Court finds that [Petitioner] is competent. She fully understands the charges against her. There is an independent factual basis for her plea of guilty containing each of the essential elements of these two offenses. She knows the statutory punishment that could be imposed on these charges and she knows her jury rights which she has knowingly and voluntarily waived. I further find that [Petitioner's] decision to plead guilty this morning was voluntary, knowing, and not the result of any force, pressure, threats, or promises other than the promises made by the government in the Plea Agreement. Therefore, [Petitioner's] plea is accepted and I hereby adjudge her guilty of the lesser included offense of Count One and also Count Eleven of the indictment based upon her pleas.

Id. at 26.

### C. Sentencing

The PSI set Petitioner's base offense level for Count One at thirty-two, pursuant to U.S.S.G. § 2D1.1(c)(4), and Petitioner's base offense level for Count Eleven at fourteen, pursuant to U.S.S.G. § 2K2.1(a)(6)(A). PSI ¶¶ 24, 30. Petitioner's offense level for Count One increased to thirty-six after enhancements for: (1) possessing a dangerous weapon,

pursuant to U.S.S.G. § 2D1.1(b)(1); and (2) being an organizer, leader, manager, or supervisor in criminal activity, pursuant to U.S.S.G. § 3B1.1(c). PSI ¶¶ 25, 27. Petitioner's offense level for Count Eleven increased to twenty after enhancements for: (1) having at least three firearms involved in the instant offense, pursuant to U.S.S.G. § 2K2.1(b)(1)(A); and (2) possessing a firearm while in possession of roughly sixteen grams of methamphetamine, pursuant to U.S.S.G. § 2K2.1(b)(6)(B). PSI ¶¶ 31-32. Because the adjusted offense level from Count One resulted in the higher offense level, Petitioner's combined adjusted offense level was thirty-six. PSI ¶ 37. This offense level decreased three points for acceptance of responsibility, resulting in a total offense level of thirty-three. PSI ¶¶ 39-41.

Petitioner received four criminal history points for seven criminal convictions pursuant to U.S.S.G. § 4A1.1(c). PSI ¶¶ 46-47, 50-51, 53-56. Petitioner received two additional points for committing the instant offense while under a criminal justice sentence. PSI ¶ 57. Accordingly, Petitioner's criminal history score of six established a criminal history category of III. PSI ¶ 58. Based on a total offense level of thirty-three and a criminal history category of III, Petitioner's guideline imprisonment range was 168 to 210 months. PSI ¶ 98. Neither Petitioner nor the government raised objections to the PSI. PSI Add.

On the day of sentencing, the government objected to Petitioner receiving a sentencing reduction for acceptance of responsibility due to jailhouse misconduct. CR 115-107, doc. no. 189, ("Sent. Tr."), p. 4. The government reasoned such misconduct evidenced a failure to cease criminal activity. The government proffered the testimony of Major Virginia Durden and Sgt. Carolyn Danford in support of the objection. Major Durden testified she became aware Petitioner had been trading or selling her prescribed lithium

7

medication.  Id. at 11.  Additionally, Major Durden testified Petitioner routinely broke clothing regulations by leaving her cell without putting on the required shirt.  Id. at 13-14.  Multiple violations led to Petitioner's confinement in a holding cell without access to television.  Id. at 15-16.  Petitioner told Major Durden "that as long as [Major Durden] was there, this type of behavior was going to go on and continue" and "[y]ou ain't seen nothing yet. This ain't the end of it."  Id. at 16, 18.  In the holding cell, Petitioner smeared feces on the door and attempted to flood the cell by purposely clogging the toilet with numerous items, such as sheets, clothing, and shoes.  Id. at 16.  On a different occasion, Petitioner used her feces to write "F Major Durden" on the wall.  Id. at 18.  Petitioner was given instructions to clean her cell but refused to do so unless moved to a different cell.  Id. at 17.

Sgt. Danford corroborated Petitioner broke clothing regulations multiple times by leaving her cell without the proper shirt.  Id. at 24-25.  Sgt. Danford testified Petitioner was a bully in the dorm, stating inmates were relieved once Petitioner was removed from her prior cell.  Id. at 25.  While in the holding cell, Petitioner threw her tray of food on the floor, urinated in a corner of the cell, approached the door of the cell unclothed anytime a guard approached, and used a plastic fork to inflict self-harm.  Id. at 27-28.  As a result, Petitioner was placed on suicide watch.  Id.  Petitioner used her feces to cover the observation window, write on the wall, and soil her eating tray.  Id. at 28.  Sgt. Danford also corroborated Petitioner attempted to flood her cell by clogging the toilet with shoes and other items, and only acted out when disciplined.  Id.  The government argued the above described misconduct violated O.C.G.A. § 16-7-24, Interference with Government Property.  Id. at 35.  The government also intercepted a letter Petitioner wrote to co-defendant Brady Hill, wherein Petitioner bragged her father received a downward departure for diminished mental

8

capacity, and the "apple . . . doesn't fall far from the tree." Id. at 36-37. In response to the government's objection, Mr. Connell argued Petitioner's behavior clearly evidenced mental illness. Id. at 37-42.

Judge Hall determined Petitioner's behavior demonstrated a clear failure on her part to accept responsibility for her actions and upheld the government's objection to the reduction of Petitioner's offense level. Id. at 44-47. As a result of the Court's denial of the acceptance of responsibility, Petitioner's new guideline imprisonment range was 235 to 293 months of imprisonment. Id. at 47. Mr. Connell offered mitigating statements based on Petitioner's troubled childhood and mental illness. Id. at 47-52. Petitioner reiterated the facts related to her mental illness, apologized for lashing out at Assistant United States Attorney Patricia Rhodes and Investigator Danko, and asked the Court for help with rehabilitation. Id. at 52-53. Judge Hall sentenced Petitioner to 240 months of imprisonment, three years of supervised release, a $1,500 fine, and a $200 special assessment. Id., doc. no. 174.

### D.     Direct Appeal

On the day of sentencing, Petitioner attested "I have decided not to file an appeal, and my attorney has explained to me the consequences of failing to do so." Id., doc. no. 173, p. 4. That same day, Petitioner signed a *pro se* pleading, wherein she expressed her "notice of . . . intent to file a collateral attack with this court, of both her conviction and sentence, based on the ineffective assistance of her court appointed counsel." Id., doc. no. 177, p. 1. The clerk's office docketed the pleading as a "notice of appeal." Id.

On September 23, 2016, Mr. Connell wrote Petitioner, stating "[d]espite your indications to the contrary to me after sentencing, I have learned of your efforts to appeal"

9

and "w[ill] not be able to represent you in an action where you intend to argue my ineffectiveness." (Doc. no. 1-1, p. 15.) On October 3, 2016, Mr. Connell filed a Motion to Withdraw and Request to Appoint Substitute Counsel, wherein he alerted the Court to Petitioner's desire to appeal and his inability to represent her given her ineffective assistance of counsel claim. Id., doc. no. 180. Judge Hall denied the motion because of the expectation Mr. Connell represent Petitioner "until relieved *by the court of appeals*." Id., doc. no. 181, p. 2 (emphasis in original) (citation omitted).

In January 2017, Judge Hall recognized Petitioner's dissatisfaction with Mr. Connell but stated, "[n]evertheless, the Court is confident that Mr. Connell will honor his continuing obligation to competently represent his client" until permitted to withdraw by the court of appeals. Id., doc. no. 195, p. 2. In October 2016, Mr. Connell filed a motion to withdraw in the Eleventh Circuit, which the court granted and appointed Amy Levin Weil to represent Petitioner. Id., doc. no. 201; United States v. Padgett, 917 F.3d 1312, 1316 (11th Cir. 2019). After briefing and oral argument, the Eleventh Circuit dismissed Petitioner's appeal for lack of jurisdiction because it failed to comply with the notice of appeal requirements under Federal Rule of Appellate Procedure 3(c)(1)(C). Padgett, 917 F.3d at 1317.

### E.    § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct her sentence, raising the following claims:

(1)    The government breached the plea agreement by objecting to a sentencing reduction for acceptance of responsibility;

(2)    Counsel provided ineffective assistance by allowing Petitioner to stipulate she joined the conspiracy in January 2013 and was responsible for between 1.5 to 5 kilograms of methamphetamine;

    (3)    Counsel provided ineffective assistance at sentencing by failing to:

        (a) challenge the Government's objection to Petitioner receiving an acceptance-of-responsibility reduction; and

        (b) object to Petitioner receiving a two-point enhancement under U.S.S.G. § 3B1.1(c) for Petitioner's alleged role as an organizer, leader, manager, or supervisor;

    (4)    Counsel provided ineffective assistance regarding Petitioner's appellate rights by failing to:

        (a)    file an appeal after Petitioner instructed him to do so; and
        (b)    adequately consult with Petitioner regarding her appellate rights; and

    (5)    The District Court violated Petitioner's rights by failing to advise her of her right to appeal after sentencing and incorrectly filing her notice of appeal.

(See generally doc. no. 6.) Petitioner requests as relief "that the Court enter an order either (1) vacating Ms. Padgett's sentence and ordering that she be resentenced; or, at a minimum, (2 allowing her an out-of-time direct appeal." (Id. at 23.)

## II.    DISCUSSION

Respondent concedes Petitioner is entitled to both a resentencing under Ground 3(a) of the amended § 2255 motion and an out-of-time direct appeal under Ground 4. (Doc. no. 11, pp. 17-22.) Petitioner only seeks an out-of-time appeal as an alternative form of relief if the claim for resentencing is denied. Furthermore, as the government pointed out, it is unnecessary and inefficient to grant an out-of-time appeal prior to resentencing. The Court finds resentencing is the proper relief under Ground 3(a) and declines to address Petitioner's remaining claims. Because the Court finds Petitioner is entitled to resentencing, and recommends dismissal of her remaining claims without prejudice, no evidentiary hearing is necessary.

## III.     CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the amended § 2255 motion be **GRANTED** as to Petitioner's claim in Ground 3(a), the amended § 2255 motion be **DISMISSED** without prejudice as to all other claims, the motion for an evidentiary hearing be **DENIED AS MOOT**, (doc. no. 3), and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 12th day of August, 2021, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA